UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| RANDY CAUDILL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 16-066-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| WELLS FARGO HOME | ) | **MEMORANDUM OPINION** |
| MORTGAGE, INC. | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the defendant's motion to dismiss or, in the alternative, to stay the matter pending the outcome of *ACA International v. FCC*, No. 15-1211, which is currently pending in the United States Court of Appeals for the District of Columbia. [Record No. 27] The defendant has also moved to stay discovery pending resolution of its motion to dismiss or stay. [Record No. 31]

**I.**

This case involves the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), which prohibits certain uses of telephone equipment. As relevant here, the Act restricts certain telephone calls using "automatic telephone dialing systems" ("ATDS") as well as pre-recorded voices except with prior express consent of the called party. § 227(b)(1). These calls are commonly referred to as "robo-calls." *See Ashland Hosp. Corp. v. Serv. Emps. Intern. Union*, 708 F.3d 737, 739 (6th Cir. 2013). The TCPA includes a private right of action for individuals who have received more than one telephone call by or on behalf of the same

entity within a twelve month period in violation of the Act. § 227(c)(5). On February 25, 2016, Plaintiff Randy Caudill filed his Complaint in this Court, alleging that Wells Fargo Home Mortgage, Inc. ("Wells Fargo") violated the TCPA by calling his cellular telephone frequently over a period four years using an ATDS, as well as a prerecorded voice. Caudill alleges that each of these calls since 2013 was made without his consent.

On May 16, 2016, Caudill amended his Complaint to include allegations that, as a result of the defendant's calls, he has suffered harm including an invasion of privacy; intrusion upon seclusion; stress; extreme anxiety; aggravation; nervousness; humiliation; worry; and deep fear of losing his home.

## II.

As an initial matter, the Court will address Wells Fargo's claim that Caudill does not have standing to sue. Article III of the Constitution limits federal court jurisdiction to actual cases and controversies. Thus, Wells Fargo's challenge to Caudill's standing is an attack on subject matter jurisdiction. *See Imhoff Invest. LLC v. Alfoccino Inc.*, 792 F.3d 627, 631 (6th Cir. 2015). As the plaintiff seeking to pursue an action in federal court, Caudill must establish standing. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). It is well-established that the "irreducible constitutional minimum" of standing consists of three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an injury in fact; which is concrete and particularized; and is actual or imminent. *Id.* Second, the plaintiff's injury must be fairly traceable to the challenged action. Third, it must be likely that the injury will be redressed by a favorable decision. *Id.* at 561. Only the first two elements are disputed here.

Although Wells Fargo seems to have abandoned its argument to the contrary, the Court has fully considered the matter and finds that Caudill's alleged injuries are concrete and particularized. In *Spokeo v. Robins*, 136 S.Ct. 1540 (2016), the Supreme Court discussed injury-in-fact in the context of the Fair Credit Reporting Act ("FCRA") which, like the TCPA, creates a private right of action. The Court explained that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. While a plaintiff cannot satisfy Article III's standing requirements by alleging a bare violation of the Act, intangible harms, such as those alleged by Caudill, may certainly be sufficient. *Id.* at 1550. The Court in *Spokeo* provided guidance in determining whether such harms are sufficiently concrete. Courts are to "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 1549. The Court also noted that the law has long permitted recovery even though certain harms may be difficult to prove or measure. *Id.*

While Caudill's initial Complaint, filed prior to the Supreme Court's decision in *Spokeo,* did not identify any specific injuries that he had suffered as a result of the telephone calls, his amended complaint alleged several intangible harms. These alleged harms, such as invasion of privacy, have traditionally been regarded as providing a basis for a lawsuit in the United States. *See Pearce v. Whitenack*, 440 S.W.3d 392 (Ky. Ct. App. 2014); *Pearce v. Courier-Journal*, 683 S.W.2d 633 (Ky. Ct. App. 1985). Further, when Congress established the TCPA in 1991, it did so to protect consumers from the "nuisance, invasion of privacy, cost, and inconvenience that autodialed and prerecorded calls generate." Rules & Regulations

Implementing the Telephone Consumer Protection Act, 30 F.C.C.R. 7961, 7979 (2015). Based on *Spokeo*, the Court is satisfied that Caudill has alleged an injury-in-fact that is concrete and particularized.

Wells Fargo also contends that Caudill does not have standing because he cannot establish that his harm is fairly traceable to the challenged conduct. The defendant goes on to state that "the TCPA does not regulate debt collection activity" and suggests that because the calls allegedly involved debt collection, the TCPA is not implicated. Ultimately, Wells Fargo reasons, it was the debt collection, not the robo-calls, that caused Caudill's alleged harm.

The defendant suggests that an individual, as opposed to an ATDS, could have made these same calls and the alleged harm would have been the same. The fact remains, however, that the calls *are* alleged to have been robo-calls, which do implicate the TCPA. Caudill alleges that he received up to four robo-calls per day over a period of approximately four years and that the calls used a prerecorded voice in violation of 47 U.S.C. § 227(b). These are the very issues that the TCPA was designed to address. Accordingly, Caudill has sufficiently demonstrated that his alleged harm is fairly traceable to the challenged conduct and, thus, he has established standing.

### III.

Having concluded that Caudill has standing to bring this action, the Court turns to Wells Fargo's alternative motion to stay the case pending the forthcoming decision of the United States Court of Appeals for the District of Columbia in *ACA International v. Federal Communications Commission*, No. 15-1211. In *ACA International*, the D.C. Circuit will review the Federal Communications Commission's ("FCC") July 15, 2010 Declaratory Ruling and Order implementing the TCPA, 30 F.C.C.R. 7961 (2015). Among the questions expected

to be addressed are: (1) whether the FCC acted arbitrarily and capriciously in expanding the definition of ATDS; and (2) whether the FCC acted arbitrarily and capriciously in requiring callers to accept revocation of consent to be called "at any time and through any reasonable means." *See id.* at Record No. 1567590.

The decision to enter a stay "ordinarily rests with the sound discretion of the [d]istrict court." *Ohio Envtl. Council v. U.S. Dist. Ct.*, 565 F.2d 393, 396 (6th Cir. 1977). Stays are not to be granted freely, as "a party has a right to a determination of its rights and liabilities without undue delay." *Id.* The party seeking the stay must demonstrate a clear case of hardship or inequity in being required to go forward. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). While there is no precise test for determining whether to issue a stay, the Court considers the balance of the hardships, the potential harm to the public, and judicial economy and efficiency. *IBEW, Local 2020 v. AT&T Network, Sys.*, No. 88-3895, 1989 WL 78212, at *8 (6th Cir. July 17, 1989) (unpublished opinion).

Caudill does not argue that he will be unduly prejudiced by the issuance of a stay. Instead, he simply advocates for an expedited resolution of this matter. Likewise, Wells Fargo says little about what hardship it would face in the absence of a stay, but the Court is mindful of the defendant's pending motion to stay discovery. Both parties focus most of their attention on whether the outcome of *ACA International* is likely to affect this case. Caudill argues it is unlikely to have an impact because Wells Fargo has violated the TCPA by using a prerecorded voice, which is not at issue in *ACA International*. One arguably relevant issue which will be addressed in *ACA International* is the FCC's definition of ATDS. Caudill contends that *ACA International* is unlikely to affect this case, however, because Wells Fargo's calling system meets the definition of ATDS under the narrower description provided in § 227.

Finally, the D.C. Circuit will consider the FCC's decision to read a revocation provision into the TCPA. The provision allows individuals to revoke consent to be called "at any time and through any reasonable means." Wells Fargo contends the forthcoming decision is relevant to this case because Caudill's "attempts to revoke consent to be called would be judged by a different standard, and may have been legally ineffective." [Record No. 27-1, pp. 16–17] In his Amended Complaint, Caudill alleges that after asking Wells Fargo to stop calling, he was mailed a document to sign for the calls to cease. [Record No. 25, p. 3] He signed the form and returned it to Wells Fargo, yet the calls continued. *Id.* He alleges that on August 20, 2015, he told the defendant to stop calling. *Id.* He stated "Don't call me anymore. No more phone calls." *Id.*

Wells Fargo has not demonstrated that a stay is appropriate under these circumstances. While it is possible that *ACA International* may have an impact on standards for revoking consent, it is unlikely, based on the facts as alleged by Caudill, that a decision on that issue will be dispositive in this case. Further, Caudill contends that Wells Fargo's equipment meets § 227's narrow definition of ATDS, so *ACA International*'s decision on that issue also is of questionable value. The Court also notes that the length of the anticipated stay is uncertain.

In the absence of a clear benefit of awaiting a decision in *ACA International*, the defendant's desire for a stay is outweighed by Caudill's interest in resolving this case, as well as the public's interest in efficient judicial proceedings. Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. The defendant's Motion to dismiss for lack of jurisdiction or, in the alternative, to stay [Record No. 27] is **DENIED.**

2.       The defendant's motion to stay discovery pending resolution of defendant's motion to dismiss or stay [Record No. 31] is **DENIED.**

This 11th day of July, 2016.

Signed By:
*Danny C. Reeves* DCR
United States District Judge